**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DAWN LEWIS, Administrator and
Personal Representative for the
ESTATE OF JAMES A. LEWIS,
JR.,

      Plaintiff,

v.                                                                    Case No. 3:25-cv-513-MMH-SJH

SHERIFF T.K. WATERS, in his
official capacity as the Sheriff of the
City of Jacksonville, Duval County,
Florida,

      Defendant.

_____

## O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Amended Complaint (Doc. 15; Motion), filed June 13, 2025. In the Motion, pursuant to Rule 12, Federal Rules of Civil Procedure (Rule(s)), Sheriff T.K. Waters seeks dismissal of Dawn Lewis's Amended Complaint and Demand for Jury Trial (Doc. 7; Amended Complaint), filed June 3, 2025. On July 16, 2025, Dawn Lewis timely filed Plaintiff's Amended Opposition to Defendant's Motion to Dismiss the Amended Complaint (Doc. 23; Response). Accordingly, this matter is ripe for review.

## I.     Background[1]

## A. Armor Correctional Healthcare Holdings, Inc.'s History

Armor Correctional Healthcare Holdings, Inc. (Armor) is a company that provides healthcare services to prisons. See Amended Complaint ¶ 17. Over the years, Armor has been accused of wrongdoing. See id. ¶¶ 36–41. In 2016, after accusations that it failed to meet contractual obligations and put inmates at risk, Armor promised to pay the New York attorney general $350,000 and refrain from bidding on New York contracts for three years. Id. ¶ 41. In 2018, Armor was charged with felony abuse of a Wisconsin inmate. Id. ¶ 37. It was convicted of the offense in 2022. Id. Prior to 2019, Armor was charged with falsifying records relating to the death of a Wisconsin inmate. Id. ¶ 40. Around the same time, at least seven counties in Florida, New York, Colorado, and Oklahoma dropped Armor as a provider. Id. In 2019, someone publicly alleged that Armor caused the death of an inmate in a Flagler County, Florida jail. Id.

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Amended Complaint and may differ from those that ultimately can be proved.

¶ 38. That same year, at least thirty-four people sued Armor for contributing to inmate deaths. Id. ¶ 39.

### B. Defendant T.K. Waters

Defendant T.K. Waters is the Sheriff of the City of Jacksonville. Id. ¶ 3. He is sued in this action in his official capacity as the Sheriff. Id. As Sheriff, he is responsible for "the policies, training, instruction, supervision, customs, practices, policies, discipline, control and conduct of all law enforcement officers and detention officers employed by the Jacksonville Sheriff's Office" (JSO). Id. In 2022, Sheriff Waters awarded Armor a new contract so it could continue serving as the healthcare provider for the Duval County Pretrial Detention Facility (PDF). Id. ¶¶ 4, 47. At the time he did so, "the most senior officials of JSO and the City of Jacksonville" had "actual knowledge of the serious risk of serious bodily harm and death" that Armor posed. Id. ¶ 47.

Additionally, during the events giving rise to this lawsuit, Sheriff Waters managed all healthcare at the PDF through Armor. Id. ¶ 17. Plaintiff, Dawn Lewis, as the Administrator and Personal Representative of the Estate of James A. Lewis, Jr., alleges that Armor generally "provided inadequate medical care to inmates in the PDF[.]" Id. ¶ 42. She further asserts that Sheriff Waters held monthly meetings with his Medical Audit Committee to review Armor's healthcare and prescription decisions. Id. ¶ 43. During its meetings, the Committee discussed Armor's staffing levels at the PDF. Id. After these

- 3 -

discussions, Sheriff Waters "took no action to ensure that inmate lives would not be lost at his jail." Id.

### C. James A. Lewis, Jr.'s Experience at the PDF

On April 14, 2022, James A. Lewis, Jr., an honorably discharged Army veteran, was diagnosed with cancer. Id. ¶ 10. After his diagnosis, doctors discovered a brain tumor. Id. On April 19, 2022, Lewis underwent brain surgery to remove the tumor. Id. ¶ 11.

On May 17, 2022, Lewis was traveling to the Veterans Affairs (VA) hospital when he became confused and believed that someone had stolen his vehicle at a gas station. Id. ¶ 15. After an interaction between Lewis and a gas station employee, someone called JSO. Id. ¶ 16. Upon arrival, JSO officers tased and arrested Lewis. Id. The officers then transported Lewis to the PDF. Id.

After Lewis arrived at the PDF, Armor evaluated him. Id. ¶ 18. A behavioral health intake nurse at the PDF placed Lewis on suicide watch, and someone put him in a four-point restraint chair. Id. ¶¶ 18–19. Lewis told Sheriff Waters and Armor employees that he was agitated and that his right foot was bothering him. Id. ¶ 21.

On May 17 and 18, 2022, Lewis's spouse, Dawn Lewis, contacted JSO to file a missing person's report. Id. ¶ 22.[2] On the second day that Mrs. Lewis

---

[2] Going forward, the Court will refer to Dawn Lewis as "Mrs. Lewis."

- 4 -

called, May 18, 2022, a JSO officer informed her that Lewis was incarcerated at the PDF. Id. ¶ 23. Mrs. Lewis then told JSO officers that Lewis recently underwent brain surgery and needed medication. Id. That same day, Sheriff Waters and Armor employees observed Lewis in his room wearing no clothes, "playing in the toilet[,] . . . experiencing mania[,] and . . . actively hallucinating." Id. ¶ 24. Despite observing these behaviors, Sheriff Waters took "no meaningful medical intervention[.]" Id.

Mrs. Lewis called JSO to inquire about Lewis's condition again on May 19, 2022. Id. ¶ 25. Mrs. Lewis told the responding officer that Lewis recently underwent brain surgery and needed medication. Id. The next day, on May 20, 2022, Mrs. Lewis and her sister-in-law brought Lewis's "most important medications" to the PDF and advised JSO officials that Lewis needed them to prevent seizures, brain swelling, and infection. Id. ¶ 26. Someone at JSO connected Mrs. Lewis and her sister-in-law to an Armor nurse at the PDF who wrote down the names of Lewis's medications and the contact information for the VA hospital pharmacy. Id. A JSO detective who had seen Lewis also told Mrs. Lewis and her sister-in-law that Lewis had been acting strangely. Id. ¶ 27. "Despite the knowledge of [Lewis's] serious and deteriorating health condition,

[Lewis] was denied appropriate medical care, causing his health condition to worsen." Id. ¶ 28.

On May 26, 2022, JSO officers took Lewis to University of Florida (UF) Health in Jacksonville "allegedly with gangrene." Id. ¶ 29. The doctors amputated Lewis's foot at the ankle. Id. On June 1, 2022, someone told Mrs. Lewis that doctors performed another amputation of Lewis's leg below the mid-calf. Id. ¶ 30. The next day, June 2, 2022, doctors amputated Lewis's leg below the knee. Id. ¶ 31. During his time at UF Health, Lewis was handcuffed to his bed because he was in Sheriff Waters's custody. Id. ¶ 32.

On an unspecified day, Lewis was released from the PDF. See id. ¶ 33. After his release, Lewis's health deteriorated. Id. On December 30, 2022, he died. Id. Mrs. Lewis does not provide Lewis's cause of death. See generally id.

On December 27, 2024, Mrs. Lewis initiated this action in the Circuit Court of the Fourth Judicial Circuit, in and for, Duval County, Florida. See Complaint and Demand for Jury Trial (Doc. 4; Initial Complaint). After being served with process on April 24, 2025, Sheriff Waters removed the action to this Court on May 7, 2025. See Notice of Removal (Doc. 1; Notice). On May 13, 2025, Sheriff Waters moved to dismiss the Initial Complaint. See Defendant's Motion to Dismiss (Doc. 6; Initial Motion). Mrs. Lewis filed the Amended Complaint on June 3, 2025, asserting two claims. See Amended Complaint ¶¶ 50–71. In Count One, Mrs. Lewis brings a state law claim for wrongful death. See id. ¶¶ 50–63.

And in Count Two, Mrs. Lewis brings a claim under 42 U.S.C. § 1983 for deliberate indifference to Lewis's serious medical needs. See id. ¶¶ 64–71. On June 13, 2025, Sheriff Waters moved to dismiss the Amended Complaint. See generally Motion.

## II.    Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal[]") (quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678–79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

### III.  Discussion

Sheriff Waters moves to dismiss Count One of the Amended Complaint because it sounds in medical negligence and Mrs. Lewis failed to comply with Florida's pre-suit medical malpractice requirements. <u>See</u> Motion ¶ 6. He moves to dismiss Count Two because Mrs. Lewis failed to plead that Sheriff Waters's

deliberate indifference stemmed from a municipal policy or custom.[3] Id. The Court will address Count Two first because it is the federal claim that gives the Court subject matter jurisdiction over this action. See Amended Complaint ¶ 7.

### A. Count Two: Deliberate Indifference to Serious Medical Needs

Preliminarily, the Court notes that the Eighth Amendment does not apply to Lewis as a pretrial detainee at the PDF. See Dang ex rel. Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1279 (11th Cir. 2017). Instead, the claim for deliberate indifference to Lewis's serious medical needs arises under the Fourteenth Amendment because he was a pretrial detainee at the time of the alleged events. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020). Regardless, a deliberate indifference claim under the Fourteenth Amendment is "evaluated under the same standard as a prisoner's claim of inadequate care under the Eighth Amendment." Id. (quoting Dang, 871 F.3d at 1279). As the Eleventh Circuit stated in Swain, "[t]he Eighth Amendment—and therefore the Fourteenth Amendment also—is violated when a jailer 'is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury.'" Id. (quoting Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016)).

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that

---

[3] These arguments are identical to those that appeared in the Initial Motion. Compare Motion at 5–14 with Initial Motion at 5–14.

inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526–27 (1984)). [4] To state a Fourteenth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must allege "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." <u>Youmans v. Gagnon</u>, 626 F.3d 557, 563 (11th Cir. 2010) (quoting <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306–07 (11th Cir. 2009)). To show deliberate indifference, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. <u>Swain</u>, 961 F.3d at 1285 (citing <u>Farmer</u>, 511 U.S. at 834). As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" <u>Keohane v. Fla. Dep't of Corr. Sec'y</u>, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). Specifically, the Eleventh Circuit has instructed that, to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a

---

[4] Because the minimum standard for providing care under the Eighth Amendment is the same as that required by the Fourteenth Amendment, precedent under either amendment is equally applicable. <u>Andujar v. Rodriguez</u>, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007).

- 10 -

> deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834.]
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, . . . and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45 . . . .

Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (enumeration and emphasis omitted);[5] see Stalley v. Cumbie, 124 F.4th 1273, 1283 (11th Cir. 2024) (recognizing that to prevail on a deliberate indifference claim, a plaintiff must show that he suffered "an 'objectively serious medical need[,]'" and that the defendant acted with deliberate indifference to that need, meaning that the defendant "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness[]" (first quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir.

---

[5] For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence[]" standard in determining whether an official acted with deliberate indifference to an inmate's serious medical need. Wade, 106 F.4th at 1255. In Wade, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer and clarified that courts in this circuit should apply the "subjective recklessness" standard "as used in the criminal law[.]" Id. at 1253. The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Id. at 1265 (Jordan, J., concurring).

2003); then citing Farmer, 511 U.S. at 836–40)).

In the Amended Complaint, Mrs. Lewis alleges that Sheriff Waters deprived Lewis of his Fourteenth Amendment rights. Amended Complaint ¶ 70. However, she does not explicitly say what the Fourteenth Amendment violation is. See id. Nonetheless, Sheriff Waters does not dispute that Mrs. Lewis pleads a Fourteenth Amendment violation. See generally Motion. Thus, drawing all reasonable inferences in Mrs. Lewis's favor, Randall, 610 F.3d at 705, the Court assumes that the Fourteenth Amendment violation is that Sheriff Waters "acted or failed to act in such a manner as to prevent [Lewis] from obtaining needed medical treatment and care and/or to prevent needed medical treatment and care from reaching [him,]" Amended Complaint ¶ 66.

As a preliminary matter, the Court notes that "a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents." Vineyard v. Cnty. of Murray, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) (quoting Owens v. Fulton Cnty., 877 F.2d 947, 951 n.5 (11th Cir. 1989)). And, where a deliberate indifference claim is brought against a municipal officer, such as Sheriff Waters, the assertion of a constitutional violation is merely the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot be based on the theory of respondeat superior. Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir.

2003)).

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). Indeed, a municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1116 (11th Cir. 2005) (emphasis omitted) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't Soc. Servs., 436 U.S. 658, 694 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479–80 (11th Cir. 1991)). The policy requirement is designed to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Grech, 335 F.3d at 1329 n.5 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). Indeed, municipal

liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." Harris, 489 U.S. at 389 (quoting Pembaur, 475 U.S. at 483–84). A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation; therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; see also McDowell, 392 F.3d at 1289. The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law[,]" Sewell, 117 F.3d at 489, or "a persistent and widespread practice" of which the entity is aware, Denno v. Sch. Bd., 218 F.3d 1267, 1277 (11th Cir. 2000).

Mrs. Lewis does not clearly identify how she believes Sheriff Waters was deliberately indifferent to Lewis's serious medical needs. As best as the Court can discern, she appears to contend that three of Sheriff Waters's policies or customs caused the violation of Lewis's Fourteenth Amendment rights: (1) a custom or practice of indifference to detainees' medical needs, Amended Complaint ¶ 67, (2) a custom of understaffing the PDF, id. ¶ 44, and (3) an official policy of hiring and retaining Armor to manage healthcare at the PDF and approving Armor's decisions as his own, despite its "history of misconduct

and corporate wrongdoing[,]" id. ¶ 68. The Court will address each of these theories of municipal liability in turn.

### 1.  Custom or Practice of Indifference to Medical Needs

Mrs. Lewis's contention that Sheriff Waters had a custom or practice of indifference to the medical needs of detainees is simply too conclusory to survive a motion to dismiss. See Jackson, 372 F.3d at 1262. Indeed, she alleges no facts suggesting that Sheriff Waters was indifferent to any other detainee's medical needs. See Amended Complaint ¶ 67. Instead, Mrs. Lewis attempts to plead the existence of a custom or practice by alleging that Armor contributed to inmate deaths and injuries, falsified records, was dropped as a provider, and failed to meet contractual obligations at prisons around the country, including in New York, Wisconsin, Colorado, Oklahoma, and Flagler County, Florida. See id. ¶¶ 37–41. Notably, none of these incidents occurred at a Duval County facility, let alone at the PDF. See id. ¶¶ 37–41.

As a preliminary matter, the Court notes that Mrs. Lewis fails to provide sufficient information about the alleged failures in the other locations for the Court to draw an inference that any such failures are the product of a common custom or practice, rather than the product of disparate failures. Moreover, she presents no allegation to support a plausible inference that any particular failure at another location was also occurring at the PDF. Simply put, assuming the allegations regarding the failures at other locations are true, "it does not

follow that [Armor's] struggles in other jails also apply to the [PDF]." <u>See</u> <u>Andrews v. Marshall</u>, No. 2:16-cv-814-FtM-99MRM, 2019 WL 11638833, at *11 (M.D. Fla. May 8, 2019).[6] Therefore, Mrs. Lewis fails to plead facts sufficient to plausibly show that there was "a persistent and widespread practice" of preventing detainees from receiving medical care <u>at the PDF</u>. <u>Denno</u>, 218 F.3d at 1277.

### 2. Custom of Understaffing the PDF

Mrs. Lewis also appears to allege that Sheriff Waters had a custom of understaffing the PDF. Amended Complaint ¶ 44. In the Amended Complaint, she asserts that, "[a]t all times material herein, Armor . . . provided too few staff members at the PDF[,] impeding the ability of inmates like [Lewis] to receive their medications as prescribed and/or proper medical evaluation and healthcare." <u>Id.</u> Further, she alleges that Sheriff Waters knew that the PDF was understaffed through the Medical Audit Committee but "took no action to ensure that inmate lives would not be lost at his jail." <u>Id.</u> ¶ 43.

---

[6] The Court notes that, although decisions of other district courts are not binding, they may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects[]"). Additionally, the Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

The Court need not decide whether Mrs. Lewis adequately pleads a custom of understaffing because she fails to plausibly allege that understaffing caused Lewis to be denied treatment or medication. In her recounting of Lewis's experience at the PDF, Mrs. Lewis never suggests staffing issues, see id. ¶¶ 18–28, much less that understaffing was the "moving force" behind Lewis's denial of medical care, see Monell, 436 U.S. at 694. She only says that Armor "provided too few staff members at the PDF[,] impeding the ability of inmates like [Lewis] to receive their medications as prescribed [and] proper medical evaluation and healthcare." Amended Complaint ¶ 44. Even drawing all reasonable inferences from this allegation in Mrs. Lewis's favor, see Randall, 610 F.3d at 705, alleging that understaffing prevented inmates like Lewis from receiving medical care—in the absence of any other facts—fails to state a plausible claim that understaffing prevented Lewis from receiving appropriate medical care. Indeed, Mrs. Lewis fails to present any factual allegation that in any way suggests that understaffing caused Lewis to receive constitutionally deficient medical care. Youmans, 626 F.3d at 563 (identifying causation between the indifference and the injury as the third required element of a deliberate indifference claim). Therefore, Mrs. Lewis fails to plead facts sufficient to satisfy the causation element of her § 1983 deliberate indifference claim. See McDowell, 392 F.3d at 1289.

- 17 -

### 3. Official Policy of Using Armor as the PDF's Healthcare Provider and Approving Its Decisions

Finally, Mrs. Lewis fails to allege that Sheriff Waters's official policy of using Armor for its services at the PDF and approving its decisions as his own caused a violation of Lewis's Fourteenth Amendment rights. A municipality can be held liable for its decision to hire someone without adequate screening if that hiring decision "reflects deliberate indifference to the risk that a violation of a particular constitutional . . . right will follow the decision." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 411 (1997). However, a failure to adequately screen an applicant's background amounts to deliberate indifference "[o]nly where adequate scrutiny . . . would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[.]" Id. Notably, "[t]he connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Id. at 412. Because this "is a stringent standard of fault," id. at 410, showing deliberately indifferent hiring "is a high bar[,]" Macauley v. Collier Cnty. Sheriff's Off., No. 2:21-cv-300-JLB-NPM, 2021 WL 4950254, at *4 (M.D. Fla. Oct. 25, 2021), amended on reconsideration on other grounds by Macauley v. Collier Cnty. Sheriff's Off., 2022 WL 294722 (M.D. Fla. Feb. 1, 2022).

Here, Mrs. Lewis contends that Sheriff Waters was deliberately indifferent to the risk that Armor would prevent detainees from receiving proper medical care because he knew or should have known that, in the past, Armor had been accused, and in some instances found guilty, of wrongful acts and hired it anyway. See Amended Complaint ¶¶ 45, 47. Specifically, Mrs. Lewis alleges that there were six sets of circumstances that, in her view, should have deterred Sheriff Waters from hiring Armor: (1) a 2016 settlement with the New York attorney general in which Armor agreed to pay $350,000 and not bid on any contracts in the state for three years after allegations that Armor failed to meet unspecified contractual obligations, id. ¶ 41; (2) a 2018 charge and 2022 conviction for felony abuse of a Wisconsin inmate, id. ¶ 37; (3) a criminal charge for falsifying records in the death of a Wisconsin inmate prior to 2019, id. ¶ 40; (4) the decisions of seven counties in Florida, New York, Colorado, and Oklahoma to drop Armor as a provider prior to 2019, id.; (5) a 2019 public allegation that Armor caused the death of an inmate in Flagler County, Florida, id. ¶ 38; and (6) the existence of thirty-four lawsuits against Armor for contributing to inmate deaths in 2019, id. ¶ 39. Her reliance on these sets of circumstances is unavailing.

The Court finds the reasoning in Macauley v. Collier Cnty. Sheriff's Off., where a jurist of this Court rejected a similar claim, to be persuasive. In Macauley, the estate of a deceased inmate argued that similar examples of a

medical provider's past conduct showed that the county sheriff inadequately screened the provider's "history of substandard medical care in other jails across the country." Macauley, 2021 WL 4950254, at *3. The estate alleged that (1) other people had died in jails that employed the provider, (2) the provider falsified medical records, (3) the provider improperly received no-bid contracts, and (4) the New York attorney general sued the provider for failure to provide access to medications and facilitate off-site specialty services. Id. at *4. The court held that the plaintiff failed to plead municipal liability based on deliberately indifferent hiring because there was no "plausible connection between the[] incidents and the injury suffered by [the plaintiff]." Id. In doing so, the court reasoned that many of the incidents were not discussed in great detail, the plaintiff did not provide the cause of death of many inmates in the examples and, when the plaintiff did specify the cause of death, it was dissimilar to the plaintiff's. Id.[7]

The same reasoning applies here. Mrs. Lewis does not provide many details about the incidents of Armor's past wrongdoings. See Amended Complaint ¶¶ 37–41. Notably, she does not allege that any of the other inmates died or were injured because of Armor preventing them from receiving medical

_____

[7] Additionally, the court noted that, although the New York lawsuit provided more details and was factually similar to the plaintiff's lawsuit, it could not be considered because it occurred after the sheriff hired the provider. Macauley, 2021 WL 4950254, at *4.

care. See id. ¶¶ 37–41.[8] And, like Macauley, the incidents involving falsifying records, dropping Armor as a provider for unspecified reasons, and failing to meet contractual obligations, see id. ¶¶ 40–41, "have little to do with" the injuries suffered by Lewis, see Macauley, 2021 WL 4950254, at *4. Therefore, Mrs. Lewis does not plead facts sufficient to show that Sheriff Waters was deliberately indifferent to a risk that Armor would prevent detainees from receiving appropriate medical care. See Brown, 520 U.S. at 412.

Because Mrs. Lewis fails to allege any policy or custom that caused a deprivation of Lewis's Fourteenth Amendment rights, she fails to state a claim on which relief can be granted. As such, the § 1983 claim for deliberate indifference to Lewis's serious medical needs is due to be dismissed.

### B. Count One: Wrongful Death

Having determined that the only federal claim in this action is due to be dismissed, the Court considers whether to continue to exercise supplemental jurisdiction over the remaining state law wrongful death claim. See Amended Complaint ¶¶ 50–63. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have

---

[8] The Court notes that Mrs. Lewis's allegations are even weaker than the plaintiff's in Macauley because she does not identify Lewis's cause of death either. See generally Amended Complaint. Such an omission is notable because it appears that Lewis died nearly six months after his release from the PDF. See id. ¶ 33. Thus, even if Armor prevented Lewis from receiving medical care, Mrs. Lewis fails to plausibly allege that Armor's actions caused his death.

supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). "The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004). Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006). However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction[.]" Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994). In particular, "considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." Ameritox, Ltd. v. Millennium Lab'ys, Inc., 803 F.3d 518, 537 (11th Cir. 2015) (quoting Baggett v. First Nat'l Bank, 117

F.3d 1342, 1353 (11th Cir. 1997)). Upon due consideration, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over the wrongful death claim. Thus, the Court declines to exercise supplemental jurisdiction over this claim.

For the reasons set forth above, the Court has determined that the federal claim in Count Two of the Amended Complaint, over which the Court has original jurisdiction, is due to be dismissed. See supra at 9–21. What remains is a uniquely state law wrongful death claim that is best addressed by the state courts. This case has not been pending for an extended period of time, and Mrs. Lewis's time in federal court has not moved beyond determining whether her Amended Complaint states a claim upon which relief can be granted. The Court has not issued any dispositive rulings pertaining to the state law claim, and the discovery deadline has not yet passed. See Case Management and Scheduling Order and Referral to Mediation (Doc. 17), entered June 16, 2025. Thus, the early procedural posture of the case weighs in favor of declining to exercise jurisdiction to allow the case to proceed fully in state court. When, as here, a plaintiff's federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims[.]" Raney, 370 F.3d at 1089; Busse v. Lee Cnty., 317 F. App'x 968, 973–74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise

supplemental jurisdiction over [Appellant's] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial."); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988), abrogated on other grounds by Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22 (2025) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").[9]

Upon consideration of the § 1367 factors and the "traditional rationales for pendent[10] jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over Mrs. Lewis's wrongful death claim. Therefore, the Amended Complaint is due to be dismissed.

---

[9] The Court notes that Cohill has been abrogated to the extent that it suggests courts have the discretion to retain supplemental jurisdiction over state law claims after a plaintiff removes federal claims by amending the complaint. See Royal Canin, 604 U.S. at 25–26, 39–41 (explaining that "[w]hen an amendment excises the federal-law claims that enabled removal, the federal court loses its supplemental jurisdiction over the related state-law claims" and declining to follow contrary dictum in Cohill). Cohill has also been abrogated by 28 U.S.C. § 1447(c) to the extent Cohill holds that courts may dismiss rather than remand removed claims over which the court lacks jurisdiction. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Cohill remains good law in that it sets forth the considerations relevant to a court's discretion to exercise supplemental jurisdiction in other circumstances.

[10] Pendent jurisdiction is now referred to as supplemental jurisdiction.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Dismiss Amended Complaint (Doc. 15) is **GRANTED IN PART** and **DENIED IN PART**.

   a. The Motion is granted to the extent that the claim Lewis brings in Count Two of the Amended Complaint and Demand for Jury Trial (Doc. 7) is **DISMISSED WITH PREJUDICE**.

   b. In all other respects, the Motion is **DENIED WITHOUT PREJUDICE**.

2. Lewis's state law claim is **REMANDED** to the Circuit Court for the Fourth Judicial Circuit, in and for, Duval County, Florida, and the Clerk of the Court is **DIRECTED** to transmit a certified copy of this Order to the clerk of that court.

3. The Clerk of the Court is **DIRECTED** to enter judgment as to Count Two, close the case, and terminate any remaining motions and deadlines as moot.

**DONE AND ORDERED** in Jacksonville, Florida this 9th day of March, 2026.

MARCIA MORALES HOWARD
United States District Judge

lc36

Copies to:
Counsel of Record
Clerk of the Fourth Judicial Circuit Court

- 26 -